In re AGENT ORANGE FEE
APPLICATION OF Victor
J. YANNACONE, Jr.

MDL No. 381.

United States District Court,
E.D. New York.

Nov. 5, 1991.

Victor J. Yannacone, Jr., Yannacone & Yannacone, Patchogue, N.Y., for Yannacone.

## AMENDED MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Victor J. Yannacone, Jr. appeals from the attached memorandum and order of chief magistrate judge Chrein denying Mr. Yannacone's application for further fees and expenses in the Agent Orange class action litigation. For the reasons stated by judge Chrein in the attached memorandum, reversal is not warranted. Mr. Yannacone has not provided adequate documentation to support his claim for expenses incurred during the litigation leading up to the Agent Orange settlement.

Nevertheless, Mr. Yannacone has some justification for his claim for an additional fee based on his efforts subsequent to the 1984 settlement, during which time the court has retained jurisdiction over the case. *See In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 1991 WL 244433 (E.D.N.Y. November 15, 1991). The court finds Mr. Yannacone entitled to a fee for his efforts on behalf of veterans and their families who are members of the Agent Orange class.

As indicated by the testimony of judge Pratt and special master Schreiber before the chief magistrate judge, Mr. Yannacone's work was central to the plaintiffs' ultimate success. He conceived the basic legal and scientific theories on which the case was based. He also invested enormous time and talent in the project by lending .his extensive scientific experience

in toxic tort and environmental disputes. He earned the trust of many of the plaintiff-veterans.

For his efforts, Mr. Yannacone was awarded $300,000 in legal fees and another $100,000 in expenses at the time of the Agent Orange settlement. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1335, 1343 (E.D.N.Y.1985), *aff'd in relevant part*, 818 F.2d 226 (2d Cir.), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). At the time, this court noted that the award of expenses was made in spite of Mr. Yannacone's "failure to submit organized documentation." *Id.* at 1343.

Since the settlement, Mr. Yannacone has continued his efforts, counseling veterans and their families as to their rights in light of the class action settlement. The veterans came to expect, with justification, that Mr. Yannacone would provide them with trustworthy information and advice important to their welfare and the welfare of their families.

Empirical research suggests that the establishment of meaningful attorney-client communication presents problems even in individual and small group litigation. *See* Hensler, *Resolving Mass Toxic Torts: Myths and Realities*, 1989 U.Ill.L.Rev. 89, 92–95. In any large consolidated multidistrict litigation or class action, the problem of maintaining contact between attorneys conducting the litigation and their "clients" is exacerbated. Often the attorney is located far from his or her clients and there is little communication beyond an occasional letter. While aggregation of cases is often necessary to provide substantive due process, the injured party may well feel that procedural due process is lacking in circumstances where he or she has little contact with the lawyer conducting the litigation, no control over decisions concerning the suit, and no real understanding of what is going on. The need to provide adequate methods of attorney-client communications remains a major problem in mass tort actions, where efficiencies of scale and reduction of transactional costs result in the attenuation of the traditional nexus between attorney and client. *See, e.g.,* E. Lind, R. MacCoun, P. Ebener, W. Felstiner, D. Hensler, J. Resnik & T. Tyler, *The Perception of Justice: Tort Litigants' Views of Trial, Court–Annexed Arbitration, and Judicial Settlement Conferences* ix–x (1989) (publication of The Institute for Civil Justice, RAND Corp.) (empirical study indicates litigants express strong desire to control handling and outcome of litigation; positive attitudes toward litigation are linked to belief that litigants' counsel are trustworthy); *see also id.* at 87–93 (supporting studies); Tyler, *The Role of Perceived Injustice In Defendants' Evaluations of Their Courtroom Experience*, 18 L. & Soc'y Rev. 51 (1984) (major determinant of defendants' satisfaction with legal system is perceived fairness of process).

There are some means of coping with this problem. In the Agent Orange litigation, for example, fairness hearings held across the nation provided a forum for many hundreds of veterans to speak and for thousands to attend and hear the litigation explained. A telephone answering service paid for with settlement funds has answered hundreds of thousands of inquiries. Pamphlets, letters, and an appeals process for settlement fund claimants have informed class members of their rights.

Mr. Yannacone has assisted in the exchange of information by taking telephone calls, answering letters, and otherwise maintaining contact with veterans and members of their families who knew of his dedication and trusted him. He is entitled to some compensation for his efforts.

That Mr. Yannacone did not keep the detailed records properly required by the Court of Appeals and the chief magistrate judge bears some witness to his selflessness and his lack of venality. Unfortunately, it also means that other lawyers for the veterans who may have done less on behalf of the Agent Orange class received greater fees and disbursements than did Mr. Yannacone. The court is thus faced with a dilemma. On the one hand, it is desirable to compensate Mr. Yannacone for his unique contribution in a manner and amount that is equitable relative to the

disbursements and fees received by other veterans' attorneys. On the other hand, the court must acknowledge the impediment to compensation created by the entirely appropriate finding of the chief magistrate judge that no further award for fees and expenses incurred prior to the settlement is possible under controlling law.

The solution lies in the court's continuing power to oversee the class action settlement fund. *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 185–86 (2d Cir.1987) (requiring district court to supervise operation of Class Assistance Program); *In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 1991 WL 244433 (E.D.N.Y. November 15, 1991) (describing uses of settlement fund and court's retained jurisdiction over fund).

While the court cannot grant Mr. Yannacone's unsupported request for nearly $500,000 in additional expenses plus large legal fees, it awards him a *final* fee of $200,000 based on his work from the time of settlement to date. He will receive no further award for past or future work.

The Clerk of the Court is directed to arrange for payment upon completion of any appeal.

So ordered.

A. SIMON CHREIN, United States Magistrate Judge.

This matter was referred to the undersigned Magistrate Judge by the Honorable Jack B. Weinstein to report and recommend on the petition of Victor John Yannacone, Jr. for an increase in his fee and expense award. For the reasons stated below, it is respectfully recommended that this petition be denied.

## BACKGROUND

This report concerns an application by Victor John Yannacone, Jr. for reconsideration of the fees and expenses awarded to him for his role in the Agent Orange Litigation. Yannacone's fee request was originally considered by Judge Weinstein who allowed Yannacone 2000 hours at $150 per hour, or $300,000.00 in fees. *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1296, 1335 (E.D.N.Y.1985). This award was based, not on any documentation, but on the Court's "knowledge of the files and its observation of Mr. Yannacone in Court." *Id.* Judge Weinstein declined to award Yannacone any expenses because the documentation submitted ranged from "nonexistent to grossly inadequate." *Id.*

Yannacone, along with a host of other attorneys, moved for reconsideration of his application. This petition was referred to Magistrate Scheindlin for report and recommendation. Magistrate Scheindlin, citing Yannacone's "unique" involvement with the case, conducted "a most lenient review of his petition." *Id.* at 1374. Magistrate Scheindlin noted that she too was hampered by the grossly inadequate nature of Yannacone's documentation. *Id.* Nonetheless, Magistrate Scheindlin found sufficient documentation to support 2036 hours and recommended a multiplier of 1.25. Magistrate Scheindlin also found documented expenses in the amount of $2,846.00, and recommended an award of that amount. Judge Weinstein adopted these recommendations and awarded Yannacone an additional $100,000.00 in expenses as the minimum sum that must have been expended to benefit the class, notwithstanding the lack of adequate documentation. *Id.* at 1343.

Subsequently, Yannacone made his second application for reconsideration of his fee and expense award. This application was referred to the undersigned for report and recommendation. By report dated July 10, 1989 I recommended that Yannacone's application for expenses be denied with two exceptions. First, I recommended an award of $36,139.00 in rent payments. This amount, however, was offset against the $100,000 in undocumented expenses awarded by Judge Weinstein and resulted in no increase in Yannacone's award. Second, I recommended that Yannacone be awarded $322,740.00 for outstanding data

processing bills.[1] I further recommended that Mr. Yannacone's request for additional fees be denied. I also indicated that this petition should be revisited if additional documentation was submitted by Yannacone. Yannacone then filed the present application, which again requests that the Court again reconsider his fee and expense award.

Yannacone's present submission consists of three parts. The first part consists of computer generated billing summaries for Yannacone, his late partner W. Keith Cavenaugh and Carol A. Yannacone, Yannacone's wife. The second part is a computer generated expense statement. The third part is an affirmation by Yannacone which purports to address the concerns mentioned in my previous report and recommendation.

By order dated April 17, 1991 Yannacone was ordered to submit: (1) an affidavit detailing how the time and expense logs were created, what records were used to create them and why these records were not made available to the court in earlier submissions; (2) an affidavit explaining the extent to which the log entries are for amounts previously awarded; (3) a sampling of records used to create the time logs; and (4) all the records used to create the expense logs. By letter dated 11 June 1991 Yannacone stated that the records used to create the expense logs were already in my possession. Yannacone's letter was otherwise unresponsive to the request made in my order.

## I. FEES

With regard to the present application, Yannacone avers that "[t]he documentation consists of a fair and reasonable sampling of actual time and expense records maintained by Yannacone and Yannacone, P.C. and Victor John Yannacone, Jr. in the regular course of their professional practice during the period from 6 June 1978 through 23 October 1983. These records were maintained contemporaneously with the services provided...."

In light of the fact that Yannacone has, on all previous occasions, been unable to supply adequate documentation of his fees, I ordered him to submit a sample of the records underlying the time logs. No response was made to this request. Without an examination of the records underlying the log entries, it is impossible to judge the adequacy of the log entries. Yannacone has been afforded an opportunity to produce these records and has declined to do so. Accordingly, it is recommended that his request for an award of additional fees be denied.

Although the lack of documentation suffices to dismiss all the fee claims, it is also noted that Yannacone requests fees for work performed by Carol A. Yannacone. It is the law of the case that Carol Yannacone's work was not of sufficient benefit to the class that it would justify an award of fees. 611 F.Supp. at 1335. This independently bars any award of fees to Carol Yannacone.

## II. EXPENSES

Like attorney's fees, expenses may be reimbursed "only for those activities that can be characterized as having substantially benefitted the class." 611 F.Supp. at 1323. Although the value of Yannacone's service remains unquestioned, it remains the law of the case that much of these services are noncompensable. 611 F.Supp. at 1335. When an applicant submits sufficient documentation of Agent Orange related expenses but cannot establish that these expenses were incurred during compensable activities, the applicant should be awarded the same percentage of expenses as they received in fees. 611 F.Supp. at 1351.

In his previous application, Yannacone submitted a series of cancelled checks as documentation of his expenses. I found this documentation insufficient to establish whether the claimed expenses were related to the Agent Orange case. Accordingly, I had no occasion to opine on whether they

---

**1.** These bills were paid directly to the data processor pursuant to court order. [footnote added by the court.]

were related to compensable activities. Yannacone has not submitted any additional documentation of his expenses. Instead he relies on his own affirmation asserting that all the claimed expenses were in connection with the Agent Orange case. Even if Yannacone's affirmation is sufficient to establish that these expenses are related to the Agent Orange case, I nonetheless find that I cannot recommend an additional award of expenses.

In his original fee petition, Yannacone requested compensation for 14,000 hours; he was awarded 2036 or approximately 14.5% of the time requested. Thus, Yannacone is entitled to only 14.5% of his documented expenses. Yannacone presently requests reimbursement for $472,766.13 in expenses. Assuming, for the purposes of discussion, the full amount is adequately documented, Yannacone would nonetheless be entitled to only 14.5% or $68,551.08 of his request. This amount would have to be offset by the $100,000.00 in undocumented expenses awarded by Judge Weinstein and, therefore, would result in no increase to Yannacone. Thus even if the documentation submitted by Yannacone is sufficient, no increase in his award can be recommended.

## CONCLUSION

For the reasons stated above, it is respectfully recommended that the petition for an increase in Yannacone's fee and expense award be denied. No objection to the recommendation herein may be entertained unless filed with the Honorable Jack B. Weinstein on or before September 25, 1991. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6, 72.